UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

In re:  }
Cristina L. Morris,  }  Case No. 20-40842-JJR7
　  }
　　　　Debtor.  }

Baowei Xia,  }
　  }
　　　　Plaintiff,  }
v.  }  AP No. 20-40026-JJR
　  }
Christina L. Morris,  }
　  }
　　　　Defendant.  }

MEMORANDUM OPINION

Introduction: This long-running dispute between online acquaintances played out across two states for over seven years, and finally culminated with the instant adversary proceeding. The plaintiff claimed he and the defendant were partners in an online couponing business and, among other allegations, that she breached her fiduciary duty as a partner by failing to share partnership profits, property and opportunities, and, therefore, she should be denied a discharge under § 727(a) of the Bankruptcy Code[1] and his damages should be declared nondischargeable pursuant to Code § 523(a). For the reasons that follow, this adversary proceeding will be dismissed, and judgment entered in favor of the defendant.[2]

---

[1] 11 U.S.C. § 101, *et seq.,* and herein referred to as the "Code."

[2] This court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the General Order of Reference, as amended, entered by the United States District Court for the Northern District of Alabama. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (b)(2)(J), and both parties have appeared and consented to this court's jurisdiction. Therefore, the court has authority to enter a final order.

Background and Findings of Fact: Before they met online, the plaintiff, Baowei Xia ("Xia") and the defendant, Christina L. Morris ("Morris") independently conducted online couponing businesses. Each would direct members of Facebook groups or other social media followers to his or her website where the users would find coupons for discounts on retail purchases, primarily at Publix grocery stores. The coupons were coded to identify their promoters—Xia or Morris—and when a potential customer interacted with the coupon, such as by opening or sharing it, the promoter was paid a few cents by the coupon's issuer. For example, a beverage supplier might offer a coupon for a discount on its product when purchased at Publix. A coupon promoter such as Xia or Morris would post and share the coupon via his or her Facebook page and other social media applications. When a follower interacted with the coupon, whether the coupon was ultimately used for a purchase, the promoter was paid a small fee. The promoters relied on volume to make their endeavors profitable, so having a large social media following was important.

Xia and Morris pursued the same social media Publix-couponing clientele when they met online about 12 years ago. They never met face-to-face until Xia filed a lawsuit against Morris in a Florida state court in 2017. Xia used at least two aliases when communicating electronically with Morris and his coupon-followers: "DeDino" and "Leo Lucas DerFiniti."[3]

---

[3] Considering Xia's history of using aliases, Morris propounded discovery asking him to verify his actual legal name and to provide proof he was legally residing in the United States. At a March 15, 2023 hearing, Xia through counsel admitted he was not a citizen of the United States. Counsel could not confirm Xia's legal resident status, and admitted that while he believed "Baowei Xia" was the plaintiff's legal name, it was not the name Xia used to enter into the partnership he alleged with Morris. (AP Doc. 138 Tr. 14-15.) The court initially did not compel production of discovery related to Xia's legal name and immigration status, but after Morris demonstrated that the information could be relevant to a defense she intended to offer, the court compelled Xia to respond to those requests. (AP Doc. 198.) During a hearing conducted on April 4, 2024, the court asked Xia why he refused to demonstrate he was a legal resident of the United States after being

2

From 2011 to 2016, Xia (then using the alias "DerFiniti") and Morris began a coupon sharing relationship through Facebook, and eventually DerFiniti became more involved in Morris's business as an "administrator." Originally, Morris believed DeDino was a screen name for the person she knew as DerFiniti, and she was unaware that Xia was the same person as DerFiniti. She was led to believe, at least initially, that Xia was a friend and roommate of DerFiniti. (AP Doc. 205, Ex. A, Morris Aff.) During late 2014, Morris agreed to pay DerFiniti at least $3,000 for his services. DerFiniti asked Morris to make his checks payable to Xia, explaining that he (DerFiniti) had lost his ID but his roommate (Xia) had an ID he could use to cash the checks. Believing DerFiniti's explanation, Morris made the checks payable to Xia. Morris continued to work with the person she then believed to be DerFiniti and helped him create a website called Publixandbeyond.com and otherwise assisted him with his couponing business, and DerFiniti likewise helped Morris with hers. (*Id.*)

During 2015, Morris sent several revealing and sexually explicit photographs of herself to Leo DerFiniti, whom she believed by then to be the same person as Xia, and invited him to reciprocate. Morris submitted affidavit testimony that Xia later used the photographs to blackmail her after their business dealings became contentious. (AP Doc. 205, Ex. A, Morris Aff.) In light of Xia's conduct during this case related to the photographs, as further discussed *infra*, the court accepts Morris's affidavit testimony as both credible and undisputed.

---

compelled to do so, and warned Xia that his refusal to respond to the discovery might result in sanctions, including the court's treating his refusal as an admission. Xia avoided answering the court's question. Morris contends that because Xia is not a legal resident, or at least that is the presumption, he does not have the capacity to conduct business or enter a business partnership in the United States.

3

Morris did not dispute that she sent the photographs or that by then she believed DerFiniti and Xia were the same person. Nonetheless, Morris justifiably sought to confirm that DeDino and DerFiniti were aliases for Xia and were not in fact different people. However, she was never able to confirm that these names all belong to the same person because Xia refused to respond to discovery that would clarify the mystery surrounding his aliases despite being ordered to do so by the court (*see* note 3 *supra*).

As their relationship evolved, Xia claimed he and Morris became formal partners in the coupon business, which Morris adamantly denied. As mentioned, Xia and Morris never met face-to-face before Xia filed the 2017 Florida lawsuit. Xia never alleged facts that would establish what type of partnership was formed, or under what state's laws—Morris resided in Alabama and Xia resided in Florida. Xia's pleadings and argument before the court establish these key undisputed facts: (1) there was no written agreement to form a partnership; (2) their respective coupon-business assets, which included websites and Facebook pages, were never contributed via a writing to a partnership;[4] (3) the alleged partnership never provided its partners Internal Revenue Service ("IRS") Schedules K-1 to report its partners' share of profits, losses, deductions, and credits; (4) Xia's tax returns did not report any partnership income; and (5) IRS forms 1099 issued by coupon issuers named the individual parties (Xia or Morris) as payee, not a partnership. Morris admitted she once told a Facebook audience she and Xia were partners, but she later renounced being his partner and claimed what she reported on Facebook was said under duress. Morris explained that

---

[4] Ala. Code 1975, § 10A-8A-4.04(e) requires that "[a] promise by a partner to make a contribution to a partnership is not enforceable unless set forth in a writing signed by the partner." And pursuant to § 10A-8A-1.08(c)(9) the requirement that such promises be in writing may not be waived.

4

Xia threatened to publicly disclose her scandalous photographs if she did not tell her Facebook followers she had become his partner.

Xia's complaint in this adversary proceeding stated that the allegations made in his Florida complaint, which was attached, were incorporated by reference but the adversary complaint recited legal conclusions without identifying with any specificity which averments in the Florida complaint would support the various claims made under Code §§ 523(a) or 727(a). Nonetheless, disregarding the deficiencies in the pleadings, in Count II of the Florida complaint, entitled "Breach of Partnership Agreement," Xia made factual averments, which, if true, could easily be construed as criminal conduct. Xia alleged that he and Morris agreed he would receive the first $3,000 from partnership profits each month, and they would equally divide the remaining income. Critically, he alleged that notwithstanding their 50-50 arrangement, all partnership income for the year 2015 would be reported as having been earned by him for income tax purposes but "[Morris] would reimburse him for one half the tax amount." (AP Doc. 1, Ex. 1 ¶ 34.) In other words, accepting Xia's averments as true, both parties agreed they would misrepresent to the IRS that all their combined coupon income had been earned by Xia and Xia would pay income taxes on the combined amount. It was further agreed that Morris would reimburse Xia for the taxes he paid on her share of the income that she had actually received. To add insult to injury, according to Xia, Morris not only failed to reimburse him for the excess taxes he paid, but she also failed to pay him his share of the income since January 2016. (*Id.* ¶ 35.)

Although not set forth as a factual allegation in his complaint, Xia explained at a hearing on April 4, 2024, that the income-hiding arrangement had at its core a second level of subterfuge. Xia claimed Morris was entitled to a spousal annuity from the Railroad Retirement Board (the "RRB"), but she believed there was a cap on the outside income she could earn and feared that

exceeding the cap would reduce or eliminate her annuity. Thus, again accepting as true Xia's factual averments and in-court explanation about their agreement (whether the agreement amounted to partnership or not), their scheme was structured to misrepresent their division of income not only to the IRS but also to the RRB.[5]

Eventually, the smoldering arrangement to conceal Morris's income and falsely report the income as Xia's erupted as a vitriolic dispute between the two, and in 2017 Xia sued Morris in Florida claiming they had "orally" formed a partnership and that Morris had, *inter alia*, breached their agreement by depriving him of partnership profits, usurped partnership assets and opportunity, breached her fiduciary duty, and fraudulently enticed him into entering in the partnership. Before the Florida suit came to trial, Morris filed for relief under chapter 7 of the Code. Xia then filed this adversary proceeding asking that the damages he claimed in his Florida lawsuit not be discharged pursuant to various subsections of Code § 523(a) and that Morris be denied an overall discharge under §§ 727(a)(2)-(a)(5) and (a)(7).

<u>Motion to Strike Response and Dismiss (AP Doc. 214); Motion to Substitute Exhibits (AP Doc. 235)</u>: Initially, Xia was represented by counsel, but his lawyer withdrew, and Xia continued to pursue his claims pro se.[6] After Xia's lawyer withdrew, Morris filed a motion for summary judgment (AP Doc. 205) and Xia filed his response which included the photographs along with

---

[5] Xia's Florida complaint did not disclose the alleged underlying purpose of their income reporting scheme, i.e., to defraud the RRB. That purpose was disclosed when Xia requested information concerning Morris's RRB annuity and when the court pressed Xia to explain the reason behind his request. When the court confronted the parties with its interpretation of their agreement at the April 4, 2024 hearing, neither provided a satisfactory explanation.

[6] Xia was represented by counsel in the Florida suit and for three years was represented by counsel in this adversary proceeding. Xia's lawyer in this proceeding requested, and with Xia's consent was given permission to withdraw, and thereafter Xia proceeded pro se. (AP Doc. 178 entered Nov. 2, 2023.)

6

accompanying email and text messages from Morris (AP Doc. 215). Although the photographs and messages were "filed" with the court as a paper submission received through the mail and normally would have been uploaded in their entirety onto CM-ECF as part of the public-facing docket, they were nonetheless withheld, sua sponte, from public view pursuant to Code § 107(b)(2).[7] Morris filed an emergency motion asking that the photographs be stricken and for sanctions, including dismissal of this adversary proceeding. At the hearing on Morris's motion, the court asked Xia to explain why he filed the photographs and to explain their probative value. Xia stated that the photographs proved Morris knew he was both "Xia" and "Leo," as shown by the contact name information associated with the email address and cell phone number Morris used to transmit the photographs and messages.[8] Morris never disputed that she communicated with Xia, DeDino, and Leo as contact names during the relevant period. According to her affidavit supporting her motion for summary judgment, what Morris did not know was which, if any, of those was Xia's *legal* name (if indeed the names all represented the same person) and, because he claimed a formal partnership existed, she wanted to know Xia's citizenship and residence status. Nonetheless, Xia refused to verify his legal name, citizenship, and legal residency status with

---

[7] Code § 107(b)(2) provides that ". . . on the . . . court's own motion, the . . . court may . . . . protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title." Fortunately, the court sua sponte directed the clerk's office not to upload the photographs when uploading Xia's response. Xia receives no credit for the clerk's attention or the court's restraint.

[8] At an earlier March 15, 2023 hearing, Xia's then-counsel mentioned the photographs as relevant only to show Morris's veracity or lack thereof: "I am not anticipating actually submitting them as a document if [opposing counsel will] concede that they are what they are." (AP Doc. 138 Tr. 10:16-18.) Morris's counsel never disputed that the photographs and contact names were what they purported to be in any proceeding on the record. Free from counsel's restraint, Xia's pro se response to Morris's motion for summary judgment was an attempt to get those photographs in the court's record for all the world to see. And ignoring the lack of their probative value, if Xia felt compelled to put the photographs into evidence, he could have sought an order allowing them to be filed under seal.

responsive discovery despite being compelled by the court to do so. *See* n. 3, *supra*. The inescapable conclusion is that Xia has a reason to hide that information from Morris and from the court.

The photographs and messages Xia filed with the court were photocopies (as a pro se litigant, Xia did not have electronic filing privileges). The court asked Xia to explain why he did not file the messages showing the contact names while simply redacting the photographs by covering them when he made the photocopies if his purpose was to show the contact names on the communications. Xia responded, incredulously, that he did not know how to do that. In other words, he claimed he did not know how to put a blank piece of paper or Post-it note between the photographs and copier screen to prevent the photographs from being copied along with the messages and their associated contact names. Xia also indicated he did not want to be accused of altering the messages by covering the photographs. The court rejects Xia's explanation, and finds it was an implausible excuse for publishing the photographs when his true intent was to humiliate Morris. Filing the photographs was clearly an act of revenge.

The court stated at the April 4, 2024 hearing on Morris's emergency motion to strike that it would grant her motion to the extent it sought to strike the exhibits that contained the inappropriate photographs, but reserved ruling on the motion to the extent it sought to strike the entire response and also sought dismissal of the adversary proceeding. The court now has thoroughly considered the matters on which it reserved ruling. The court has determined that Xia's response to Morris's motion for summary judgment should be stricken in its entirety and this adversary proceeding dismissed.

Sanctions Are Appropriate: Xia's vindictive act of filing the salacious photographs with the court was done for the sole purpose of harassing and embarrassing Morris. Xia knew the

content of the photographs themselves had no probative value and, being free from the restraining guidance of prior counsel,[9] Xia chose to put them in the record and thereby follow through with his threat to humiliate Morris if she refused to pay him what he believed he was due under their deceitful scheme.

Xia's excuse for not redacting or omitting entirely the inappropriate photographs from his response was implausible. Transmittal of the messages accompanying the photographs would have supported Xia's argument that Morris believed Xia and DerFiniti were the same person (which was admitted by Morris in her summary judgment affidavit and was never disputed). The photographs provided no probative value regarding any issue in dispute, and Xia's "disclaimers" warning a viewer that the photograph exhibits were explicit did nothing to prevent their inclusion in the document he fully intended to be placed on the public docket in the case. He was looking for an opportunity to publish the photographs and thereby embarrass Morris and cast her in a negative light. Regardless, the court finds Xia intended and expected the photographs to be docketed in CM-ECF and included in the record along with his response, as every other document he previously filed pro se had been, and he intended to fulfill his vow to publish and humiliate her with those photographs because she did not pay him what he believed he was owed. It was only the court's sua sponte withholding of the exhibits from being uploaded to CM-ECF that prevented their publication beyond the court's personnel (in addition to the copy Xia sent to opposing counsel).

Accordingly, and as a sanction for his vexatious and abusive filing of the non-probative photographs for the purpose of harassment, embarrassment, and revenge, the court concludes that Xia's entire response (AP Doc. 215) to Morris's motion for summary judgment is due to be

---

[9] *See* note 8 *supra*.

stricken.[10] Further, because the attempt to abuse the court's public docket to exact revenge is so egregious as to shock the conscience (and as Morris contends was possibly criminal under Alabama's revenge porn statute at Ala. Code § 13A-6-240), the court further concludes that Morris's request for dismissal of this adversary proceeding with prejudice as a sanction (AP Doc. 214) is due to be granted.

In so ruling, the court is exercising both its inherent power to sanction Xia's outrageous attempt to use the court's system for an improper purpose by attempting to file the blackmail photographs, as well as its statutory authority under Code § 105(a) to sanction Xia's offending behavior as is "necessary or appropriate to carry out the provisions of [the Code]" and to take action and make determinations as necessary to "prevent an abuse of process." *See Jove Eng'g, Inc. v. I.R.S.,* 92 F.3d 1539, 1553-54 (11th Cir. 1996) (discussing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991), explaining the bankruptcy court's inherent and statutory power to sanction bad-faith behavior, including exercising inherent and statutory contempt powers in the context of the automatic stay). The court is mindful that the Supreme Court in *Chambers* cautioned restraint in relying on § 105 when another provision of the Code or Federal Rules of Bankruptcy Procedure could provide an adequate sanction for bad-faith conduct that abuses the bankruptcy process. The court has considered Fed. R. Bankr. P. 9011 but finds it does not adequately address the abuse. To the contrary, providing a safe harbor to withdraw the offending photographs after Xia had accomplished his abusive purpose of embarrassing, harassing, and punishing Morris as he had long threatened by ensuring that the photographs were first seen by the court, the court's staff, and

---

[10] With Xia's response to Morris's motion for summary judgment having been stricken, her motion for summary judgment is now unopposed, and would be due to be granted on its merits. Nonetheless, disposing of this proceeding via Morris's motion for sanctions and, as discussed *infra,* sua sponte is more appropriate given Xia's conduct.

opposing counsel (and had Xia had his way as intended when he submitted his response for filing, the photographs would have been a matter of public record for anyone to access) would reward Xia rather than punishing him for his abuse of the system. Xia's behavior is exactly the type of outrageous abuse against which the court must exercise its inherent as well as its statutory authority and responsibility to ensure the bankruptcy system is not abused by bad-faith actors. Dismissing this proceeding with prejudice is the minimum sanction that will preserve the integrity of the court in this case as well as deter other litigants who may be tempted to follow Xia's example.[11] But there is a compelling and alternative reason this adversary proceeding should be dismissed.

Grounds for Sua Sponte Dismissal: Every claim in the adversary complaint relied on the conclusory allegations in the Florida complaint that some partnership of some type was formed under some state's laws at some point in time between the parties, but nowhere does Xia actually set forth any of these necessary elements to his partnership assertion. But more critically, there is a proverbial "elephant in the room" that Morris never raised to support her motions to dismiss, for summary judgment, or for sanctions: Xia's allegation that the parties agreed to have all the income earned by Xia and by Morris reported to the IRS as though it were all Xia's income, have Xia pay taxes on it, and then have Morris reimburse him for the tax he paid on the amount that was actually her income. If a partnership existed, the facts as Xia alleged in his state court complaint demonstrate it was purposefully structured to hide Morris's share of the income from the IRS, and additionally, as Xia explained his belief at the April 4th hearing, for the purpose of hiding Morris's income from the RRB and thereby protect her spousal annuity. The alleged partnership, therefore,

---

[11] Furthermore, because substitution of the exhibits would not remedy the bad faith, and because as a sanction for Xia's bad faith the response is being stricken in its entirety and this adversary proceeding will be dismissed, Xia's Motion to Request Approval of Substituting Exhibits (AP Doc. 235) is due to be denied.

served at least one if not two illegal purposes and must not be enforced pursuant to "the elementary principle that one who has himself participated in a violation of law cannot be permitted to assert in a court of justice any right founded upon or growing out of the illegal transaction." *Gibbs & Starrett Mfg. Co. v. Brucker*, 111 U.S. 597, 601 (1884). This principle applies even to agreements that are not illegal in every aspect:

> A bargain may be illegal by reason of the wrongful purpose of one or both of the parties making it. This is true even though the performances bargained for are not in themselves illegal and even though in the absence of the illegal purpose the bargain would be valid and enforceable. A party who makes such a bargain in furtherance of his wrongful purpose can not enforce it....

*Sender v. Simon*, 84 F.3d 1299, 1307 (10th Cir. 1996) (citations omitted).

At the hearing on April 4th, the court confronted Xia with the illegal purpose of the alleged partnership under his version of events, and the existential problem it created for his case but received no reply other than Xia's statement that the income tax misrepresentation scheme he alleged in his complaint was agreed to between the parties to protect Morris from losing her RRB spousal annuity. Whether Xia's version of events is true or not, the courts takes Xia's assertions as true for purposes of addressing Xia's use of the court to pursue his claims. Each of his claims is premised upon what would be, by Xia's own admission, a partnership that never correctly reported partnership income to its partners and where the primary agreement between the partners was to structure income and tax reporting to hide Morris's income from the IRS and the RRB. This arrangement as alleged by Xia would not be an accounting maneuver; it would be, at a minimum, fraud perpetrated against the IRS and the RRB.

Any attempt to enforce such a partnership under the facts as pled in the Florida complaint (incorporated by reference in the adversary complaint) must fail as being in furtherance of an illegal scheme to defraud the IRS and the RRB. Of course, Xia's version of events casts Morris

12

in a suspicious light like that shining on Xia, but that does not save Xia's claims against Morris in furtherance of the illicit scheme. The court would be complicit if it were to enforce such a partnership or other similar arrangement. Instead, the parties may stew in their own juices under Xia's version of events.

Thus, if there was a partnership under the facts Xia alleged in his state court complaint, it will not be enforced, nor may it serve as a predicate for Xia's claims that attack Morris's discharge under the Code or attack the dischargeability of any debt he may be owed by Morris. The court concludes that in addition to the reasons raised by Morris in her motion to strike and for sanctions, the adversary proceeding is due to be dismissed with prejudice, sua sponte, in its entirety as the court will not participate in enforcing an alleged partnership formed for an admittedly illegal purpose, as Xia maintains.

The court will enter an order conforming to this opinion.

Dated this 24th day of June 2024.

/s/ James J. Robinson
JAMES J. ROBINSON
U.S. BANKRUPTCY JUDGE